**Rodrigo LEAL, Appellant,**

**v.**

**The STATE of Texas, Appellee.**

**No. 04–00–00768–CR.**

Court of Appeals of Texas, San Antonio.

April 17, 2002.

Discretionary Review Refused Oct. 2, 2002.

Julie Pollock, Hitchings & Pollock, Pete Tijerina, Law Offices of Pete Tijerina, San Antonio, for Appellant.

Edward F. Shaughnessy, III, Assistant Criminal District Attorney, San Antonio, for Appellee.

Sitting: ALMA L. LÓPEZ, Justice, CATHERINE STONE, Justice and KAREN ANGELINI, Justice.

Opinion by ALMA L. LÓPEZ, Justice.

Appellant, Rodrigo Leal, appeals his conviction for possession of marijuana, arguing that the trial court erroneously denied his motion to suppress and erred in its conclusions of law. We overrule Leal's issues and affirm the judgment of the trial court.

## BACKGROUND

On the morning of November 12, 1999, the San Antonio Police Department received a phone call from an anonymous caller informing the department that there was a stolen vehicle and possible drug activity at 316 Piedmont in San Antonio. Detective Kevin Reser and Officer Willie Dillon, members of the department's Narcotics Division, drove to the location to investigate the call. Upon arriving at the location, Officer Dillon knocked on the front door and was greeted by Leal. Detective Reser and Officer Dillon identified themselves as San Antonio police officers and explained the purpose of their visit. Soon after, Leal's wife, Rebecca, joined him at the front door and met with the detectives.

Both detectives were invited inside the Leals' single-family home. Once inside, Detective Reser again explained that the purpose of their visit was to investigate an anonymous call. Detective Reser and Rebecca discussed the ownership of the vehicles located at the Leals' residence. Detective Reser then questioned the Leals about the marijuana allegation. Leal admitted that he smoked marijuana to alleviate the pain caused by his cancer. Upon hearing this information, Detective Reser requested that the Leals sign a consent-to-search form. Detective Reser filled out the form, handed it to Rebecca to read, and asked her if she had any questions. Detective Reser then asked Rebecca to sign the form. Rebecca signed it without hesitation.

The detectives then conducted a search of the home beginning in the master bedroom. Officer Dillon first spotted marijuana residue on top of a dresser along with a box of Ziploc bags. On the right side of the dresser he found approximately one pound of marijuana. He also uncovered a scale and a large sum of money. Leal was then placed under arrest and read his *Miranda* rights. A K–9 dog was called to the scene to locate any other marijuana. The K–9 dog alerted Officer Dillon to a kitchen cabinet which contained approxi-

mately one quarter-pound of marijuana. Detective Reser then searched outside the Leal's home and approached a storage shed located in the backyard. A search of the shed uncovered another block of marijuana weighing approximately four or five pounds.

Leal was indicted the same day for knowingly and intentionally possessing a usable quantity of more than five pounds but less than fifty pounds of marijuana. Leal moved to suppress the evidence obtained as a result of the search and any statements or admissions made by him at the time of the arrest or during any subsequent illegal detention. The trial court conducted an evidentiary hearing and denied the motion. Leal subsequently pled *nolo contendere.* The trial court imposed a six-year sentence, which was suspended, placed him on community supervision for six years, and assessed a $1000.00 fine. Leal appeals his conviction and argues that the trial court erroneously denied his motion to suppress.

## DISCUSSION

### 1. Standard of Review

In reviewing the trial court's ruling on a motion to suppress, we afford deference to the trial court's determination of the historical facts but we decide *de novo* whether the trial court erred by misapplying the law to the facts. *See Guzman v. State,* 955 S.W.2d 85, 87–88 (Tex. Crim.App.1997). If the government obtains evidence improperly the trial court must suppress the evidence; it has no discretion in the matter. *See* Tex.Code Crim. Proc. Ann. art. 38.23(a) (Vernon Supp.2002); *Polk v. State,* 738 S.W.2d 274, 276 (Tex.Crim.App.1987). To determine that the marijuana found on Leal's property was admissible, the trial court had to conclude that it was the product of a legal search.

### 2. Consent to Search

The Fourth Amendment to the United States Constitution guarantees people the right to be "secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. As a result, searches conducted without a warrant are per se unreasonable. *Mendoza v. State,* 30 S.W.3d 528, 531 (Tex.App.-San Antonio 2000, no pet.) (citing *Katz v. United States,* 389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967)). When a search without a warrant is executed, the State bears the burden to show that the search falls within one of the narrow exceptions to the warrant requirement in order for the search to be constitutionally permissible. *Id.*

An exception to the warrant requirement is a search conducted by consent. *Id.* To show that the search was made with the property owner's consent, the State must prove by clear and convincing evidence, based on the totality of the circumstances, that the defendant gave consent freely and voluntarily. *Id.* A third party may also properly consent to a search when he has control over and the authority to use the premises being searched. *See United States v. Matlock,* 415 U.S. 164, 171, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974). For the consent to be voluntary, it must not be the product of duress or coercion, actual or implied. *See Schneckloth v. Bustamonte,* 412 U.S. 218, 248, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973).

In his first issue, Leal asserts that the trial court erroneously denied his motion to suppress because the State failed to prove, by clear and convincing evidence, that voluntary consent was given to search his home. In the case before us, Rebecca signed the consent-to-search

form. Because she is married to Leal and resided in the home where the search was conducted, she had the authority to consent. The only question is whether Rebecca gave her consent freely and voluntarily. In evaluating voluntariness of consent, factors such as whether weapons were drawn or whether a person was in custody at the time consent was furnished are important factors to be considered. *See Carpenter v. State,* 952 S.W.2d 1, 4 (Tex.App.-San Antonio 1997), *aff'd,* 979 S.W.2d 633 (Tex.Crim. App.1998). The record reflects that when the detectives arrived at Leal's residence, they were wearing plain clothes, had their police badges displayed on a neck chain, and, although armed, had their guns concealed. Furthermore, Rebecca was never placed under police custody.

■■■ Leal argues that Rebecca was threatened by the officers. Rebecca testified at the hearing on the motion to suppress that at the time Detective Reser asked her to sign the consent-to-search form, he threatened to take her granddaughter, who she claims was in the home that day, to a shelter. Detective Reser, however, testified that he did not threaten Rebecca, nor did he recall seeing a young child present. A trial court's findings based on credibility and demeanor are to be given almost total deference. *See Guzman,* 955 S.W.2d at 89. The trial court was free to disregard Rebecca's testimony and believe Detective Reser. *See Martinez v. State,* 17 S.W.3d 677, 683 (Tex. Crim.App.2000). Based on the totality of the circumstances, the trial court did not abuse its discretion in finding that Rebecca's consent was given freely and voluntarily. Therefore, we overrule issue one.

### 3. Scope of Search

■■■■ In his second issue, Leal asserts that the trial court erroneously failed "to suppress the marijuana found in the shed in that the search of the shed exceeded the permissible scope of the ... consent to search." The consent-to-search form, titled "CONSENT FOR SEARCH OF PRIVATE PREMISES," signed by Rebecca, reads, in part, as follows:

> I, Rebecca Leal ... do hereby authorize: Reser # 2096 [and] Dillon # 1346[,] Police Officers of the City of San Antonio, Bexar County, Texas, to conduct a complete search of the property and premises occupied by me and described as [a] one story wood frame, located at 316 Piedmont[.] These officers are authorized by me to take from my property and premises any narcotic drugs, papers, materials, or other property which they may desire upon giving a receipt for the same.

Specifically, Leal asserts that the storage shed located in his backyard was not part of his home but rather a separate building. Therefore, Leal concludes, the search of the storage shed exceeded the scope of consent because the form limited the search to the "one story wood frame [house], located at 316 Piedmont." However, case law suggests that the search of a "premises" includes other buildings apart from the main residence. *See Bess v. State,* 636 S.W.2d 9, 10 (Tex.App.-Corpus Christi 1982, writ ref'd) (acknowledging that search warrant authorizing search of "place and premises" at specific address includes "sheds and other outbuildings located behind the principle residence"); *see also Tubbs v. State,* 124 Tex. Crim. 65, 60 S.W.2d 220, 221* (App.1933) (providing that word "premises" has "a meaning so broad and varied that its interpretation in a given case is to a great extent governed by the context"); *Comeaux v. State,* 118 Tex.Crim. 223, 42 S.W.2d 255, 256 (App.1931) (holding that property description of "a certain place and premises" designated as private resi-

dence not only included residence but also garage or outhouse located on same lot in back of residence). Search warrants and consent-to-search forms serve the same purpose, permitting a legal search, and only differ as to the source of authority. Therefore, in light of these cases, we find that although the consent-to-search form did not specifically list the storage shed, the description of "property and premises" of the home is broad enough to encompass a search of the storage shed located in Leal's backyard. Therefore, we overrule issue two.

### 4. Findings of Fact and Conclusions of Law

In his third issue, Leal asserts that the trial court erred in holding, in its conclusions of law, that an oral statement he made after he was arrested and read his *Miranda* rights was "inadmissable, but could become admissible pursuant to the exceptions found in Article 38.22 of the Texas Code of Criminal Procedure."[1] Leal argues that none of the exceptions in Article 38.22 are applicable to his oral statement. He further complains that the

trial court failed to specify which exceptions, if any, were applicable. We review a trial court's conclusions of law *de novo. See Guzman,* 955 S.W.2d at 89.

Generally, oral statements made by an accused as a result of a custodial interrogation shall not be admissible against an accused. *See* TEX.CODE CRIM. PROC. ANN. art. 38.22, § 3(a) (Vernon Supp.2002). This rule is strictly construed. *See* TEX. CODE CRIM. PROC. ANN. art. 38.22, § 3(e) (Vernon Supp.2002). However, the Texas Code of Criminal Procedure provides exceptions to the general rule. *See* TEX.CODE CRIM. PROC. ANN. art. 38.22, §§ 3, 5, 8 (Vernon 1979 & Supp.2002).

In his motion to suppress, Leal requested "[a]ny statements or admissions made by [him] at the time of his arrest or during subsequent illegal detention" be suppressed on several grounds. None of the grounds asserted, however, related to the admissibility of his oral statement. Instead, the motion was based on the voluntariness of the consent to search form.[2] Furthermore, at the hearing on his motion to suppress, the issue of the admissibility of his oral statement did not arise. Leal,

1. Leal originally asserted that the trial court erred in failing to enter findings of facts and conclusions of law. We abated the matter to allow the trial court to enter findings of facts and conclusions of law and permitted Leal to file a supplemental reply brief regarding the findings and conclusions of the trial court.

2. Leal's motion to suppress reads, in relevant part:

As a basis for this motion, the Defendant would show the Court as follows:

I.

The illegal arrest custody, detention, search and seizure took place during an interval when no warning was given the Defendant that he was not required to consent to the search and seizure. No effort was made by any officer to make the Defendant aware that any evidence found could be used against him. The circumstances surrounding the po-

lice encounter with the Defendant were coercive. Any oral or written consent to search [was] therefore, involuntary and the result of overbearance by the forces of the State.

II.

The consent of Rebecca Leal to search the premises is not binding on the Defendant, for the reason that she did not have a right to immediate possession of any evidence, or, if indeed such right[] exist[s], [it was] inferior to the rights of the non-consenting Defendant. The facts reflect that the Defendant had a reasonable expectation that his right to privacy would remain exclusive and was not to be shared.

The consent of the third party was involuntary, coerced and obtained without knowledge that the said third party had a right to refuse to consent to the search.

III.

The alleged consent to search was not voluntary.

having grounded his motion on one ground, cannot switch it on appeal. *See State v. Allen,* 53 S.W.3d 731, 734 (Tex. App.-Houston [1st Dist.] 2001, no pet.). Because Leal failed to raise the issue of the admissibility of his oral statement before the trial court, error, if any, has been waived. *See* Tex.R.App. P. 33.1(a). As a result, we are precluded from reviewing the issue on appeal. *See id.* We overrule Leal's third issue.

## CONCLUSION

Having overruled Leal's three issues, we affirm the judgment of the trial court.